# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:22CR200 |
| vs. | |
| MARK A. SMITH, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the Court on the Amended Motion to Suppress (Filing No. 47) filed by Defendant, Mark A. Smith. Defendant filed a brief (Filing No. 48) in support of the motion and the government filed a brief (Filing No. 52) in opposition. The government also relies on its previously filed brief (Filing No. 32) filed in opposition to Defendant's original motion to suppress (Filing Nos. 26-27).

The Court held a pre-hearing status conference with counsel on June 16, 2023, and held an evidentiary hearing on the motion on June 20, 2023. Defendant was present at the evidentiary hearing proceedings with his attorneys, Frankie Hass and Jeff T. Courtney. The government was represented by Special Assistant United States Attorney, Joseph P. Meyer. The Court received into evidence, without objection, the government's Exhibits 1-3. Omaha Police Department (OPD) Officers Kyle Graber (Officer Graber) and Robert Seitzer (Officer Seitzer) testified at the hearing. A transcript (TR.) of the hearing was prepared and filed on July 13, 2023. (Filing No. 60). The matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

On July 16, 2022, Officer Graber and Officer Seitzer were on patrol in North Omaha in their roles with the gang suppression unit. At approximately 8:43 p.m., the officers initiated a traffic stop of a Chevrolet Cruze for committing an illegal wide turn from North 48th Street onto Ames Ave. into the outside lane, and for failing to signal a hundred feet prior to making the turn. The Chevrolet contained three occupants; two women were seated in the front, and Defendant was seated in back. (TR. 8-10). Officer Seitzer's Body Worn Camera (Ex. 1-2) and Officer Graber's Body Worn Camera (Ex. 3) recorded the events of the stop.

Officer Seitzer approached the driver's side of the Chevrolet and Officer Graber approached the passenger side. As the officers approached, they both noticed a bottle in a brown paper bag sitting on the back seat near the Defendant. (TR. 11, 40). Officer Seitzer requested the driver's identification and confirmed that it was her car. Officer Graber asked for Defendant's identification, which he did not have, but replied with his full name and date of birth. Officer Seitzer asked the occupants of the vehicle, "What kind of bottle is that, do you know?" Defendant picked up the bottle from the back seat and handed it to Officer Graber while it was still in the paper bag and replied, "A 40-ounce. They just picked me up from my house. It was frozen in my freezer." Officer Graber asked Defendant, "Is that opened?" and Defendant responded, "No, she just cracked it a minute ago, but I told her it was frozen." (Ex. 1 at 1:10-1:37; Ex. 3 at 1:15-1:46). Officer Graber's body cam reflects the condition of the bottle as Defendant handed it to Officer Graber (Ex. 3 at 1:38):



and in Officer Graber's hand (Ex. 3 at 1:46):



2

Officer Graber testified he observed it was Olde English malt liquor, a 42-ounce bottle, inside a brown paper bag. Officer Graber testified he identified the beverage based on the stamp on the top of the bottle. Officer Graber is familiar with the term "40-ounce" from his training and experience and understands that to relate to alcohol, and also knows that containers in brown paper bag typically are alcohol containers. (TR. 11, 28, 34-35).

Officer Graber then placed the bottle on top of the car and stated, "He said he cracked it." The front seat passenger responded, "No, I did." Defendant stated, "It hasn't been opened," and the front passenger repeated, "I did it." Officer Graber again stated, "He said it's been cracked." (Ex. 3 at 1:46-2:00). Officers made all three occupants exit the Chevrolet. As Defendant was getting out of the vehicle, Officer Graber told Defendant that because he admitted he "cracked" open the bottle they were going to search the car because of the open container violation. The front passenger again said, "I did that." Defendant replied the bottle is "not open" and "the seal isn't broken man" and took the bottle off the top of the car to hand it back to Officer Graber. Officer Graber again stated, "you said it was cracked" and Defendant replied, "I said it's not open" and "If you twist it like that then it's not open." (TR. 12; Ex. 3 at 2:25-3:01; Ex. 1 at 2:49-3:00). Officer Graber placed the bottle back inside the Chevrolet while all the occupants were near the police cruiser. (Ex. 1 at 3:35-3:40). Both officers testified they did not smell the odor of alcohol emanating from the vehicle or the passengers, and no one appeared intoxicated. (TR. 28, 30-31, 50-51).

Officer Graber testified he took the statement that the bottle was "cracked" to mean the seal to the bottle was broken, which made it an open container under Nebraska law. Officer Seitzer likewise testified he understood the statement the bottle had been "cracked" to mean the seal had been broken and the bottle was open. (TR. 12, 42). Officer Graber testified that "it appeared that [the seal of the bottle] had been severed, broken," and explained that not every bottle would have a "big gap" after the seal is broken because "If you screw a bottle down tight enough, it will appear closed." (TR. 22-23). Officer Graber later clarified, "I do believe *part* of the seal was broken on this bottle when I looked at it," and "I believe *part* of the seam was cracked." Officer Graber testified he could not have confirmed whether the seal was broken without attempting to twist the cap himself. (TR. 25-26, 36).

After all the occupants were out of the vehicle, Officer Seitzer began a "probable cause" search of the Chevrolet, starting in the back seat where the officers had first observed the bottle,

and saw a black drawstring bag on the floorboard near where Defendant had been sitting. (TR. 15, 42-43). Officer Seitzer searched inside the drawstring bag and felt the handle of a handgun. Officer Seitzer then handcuffed Defendant before resuming his search of the drawstring bag, and located four black bags containing suspected methamphetamine, a digital scale, and $411 in cash. (TR. 44).

Officer Seitzer returned to the other occupants of the vehicle and asked again about who "cracked" the bottle. The front passenger explained that when Defendant first got into the car, he handed the bottle to her and told her it was frozen. Officer Graber suggested, "You cracked it to relieve the pressure?" The front passenger replied, "I didn't crack it," and gestured that she "little twisted" the bottle's cap and then "the thing came out." Officer Graber again suggested she cracked it to "release tension" and the front passenger replied, "I was just going to take a drink, that's all." (Ex. 1 at 7:05-7:30; Ex. 3 at 7:09-7:32).

At some point during the course of the search, the bottle of alcohol ended up in the street. At the conclusion of the stop and search, Officer Seitzer picked up the bottle out of the street and took it out of the brown paper bag to examine and log it in a report. (Ex. 2 at 8:15-9:07). Officer Seitzer returned the driver's identification and told the other occupants of the Chevrolet they were free to leave. Officer Seitzer then twisted off the top of the bottle, producing the distinct sound of carbonation releasing from the bottle, and poured the beverage into the street. (Ex. 2 at 32:40-33:11). Defendant had been arrested and transported for booking.

On September 20, 2022, the grand jury returned a three-count indictment against Defendant charging him with knowing and intentional possession with intent to distribute 50 grams or more of methamphetamine (actual), knowing possession of a firearm during and in furtherance of a drug trafficking crime, and possession of a firearm having previously been convicted of a felony. (Filing No. 1). Defendant has filed the instant motion to suppress the evidence obtained from the warrantless search of his drawstring bag during the traffic stop on July 16, 2022. Defendant argues the warrantless search of his drawstring bag violated his Fourth Amendment rights because the "mere possibility of an open container within an automobile" did not establish probable cause for officers to search the automobile and each passenger's personal effects therein. (Filing No. 48 at p. 1). Defendant also asserts the search of the bag was the direct result of a prolonged and unlawful detention of Defendant, as a passenger in a vehicle stopped because of a traffic violation. (Filing No. 48 at pp. 8-9; TR. 5).

The government does not contest Defendant's standing to challenge the search of his drawstring bag. (Filing No. 52 at p. 1); see *United States v. Trejo*, 135 F. Supp. 3d 1023, 1031 (D.S.D. 2015) ("[A] passenger does not lose a legitimate expectation of privacy in his or her bag simply by placing it in the vehicle of another."). The government asserts there was probable cause for officers to search the vehicle and Defendant's drawstring bag for other open containers of alcohol under the automobile exception to the warrant requirement. (Filing No. 32 at pp. 4-5; Filing No. 52 at pp. 1, 3). The government asserts that the Court need not actually determine whether the alcohol container in this case was in fact "open" or the seal "broken" because even if it was not, it was objectively reasonable for officers to be mistaken about that fact given the vehicle occupants' statements about "cracking" the bottle. (Filing No. 32 at pp. 5-9).

## ANALYSIS

**I. Whether the search of Defendant's bag was caused by an unreasonably extended traffic stop without reasonable suspicion**

Defendant argues the search of his drawstring bag was the product of his prolonged and unlawful detention as a passenger in a vehicle stopped because of a traffic violation. "A passenger may suppress evidence found in a vehicle when an unreasonably extended traffic stop causes the search." *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019) (citing *United States v. Peralez*, 526 F.3d 1115, 1121 (8th Cir. 2008)). "A traffic stop is constitutionally limited to the time required to complete its purpose but may be extended due to an officer's reasonable suspicion of criminal activity." *Id.* (citing *United States v. Riley*, 684 F.3d 758, 763, 765 (8th Cir. 2012)). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2014) (citation omitted). "[O]fficers may continue the stop while they complete tasks related to the stop, such as checking the vehicle's registration and insurance, checking the occupants' names and criminal histories, preparing the citation, and asking routine questions." *United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022) (citing *United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th Cir. 2017)). If officers encounter "legitimate complications in completing these routine tasks" of the traffic stop, the duration of the stop may reasonably be extended. *Murillo-Salgado*, 854 F.3d at 415.

5

The undersigned magistrate judge rejects Defendant's argument that the search of his drawstring bag was the product of a traffic stop extended without reasonable suspicion. In this case, officers initiated a traffic stop of the Chevrolet after observing traffic violations of an illegal turn and failing to properly signal the turn. As part of this traffic stop, the officers performed routine tasks related to the stop, including approaching the vehicle, asking for the occupants' names and identification, and asking for the vehicle's registration. Almost immediately upon approaching the vehicle, both Officer Seitzer and Officer Graber observed a bottle in a brown paper bag sitting on the backseat next to Defendant, and began asking questions about whether the bottle contained alcohol and whether it was open. In response, Defendant indicated it was a "40-ounce" bottle, which Officer Graber understood meant the bottle contained an alcoholic beverage. The occupants of the vehicle also stated the front passenger had "cracked" the bottle, which officers understood meant the bottle's seal had been broken. At the time the officers made these observations and learned this information, the original "mission" of the traffic stop was nowhere close to complete. Whether or not those observations established probable cause justifying the warrantless search of Defendant's bag is a different question, which the undersigned magistrate judge will discuss below.

## II.   Whether probable cause existed justifying the warrantless search of Defendant's bag

The government contends the warrantless search of Defendant's drawstring bag was a proper search under the automobile exception to the warrant requirement. The government asserts officers had probable cause to believe an occupant of the Chevrolet had violated Nebraska's open container law, and that probable cause extended to search Defendant's drawstring bag, which could have contained additional open containers. (Filing No. 32 at pp. 1, 5; Filing No. 52 at p. 1).

"'The Fourth Amendment proscribes all unreasonable searches and seizures,' and warrantless searches are per se unreasonable unless they fall under an exception to the warrant requirement. *United States v. Farrington*, 42 F.4th 895, 898 (8th Cir.), *cert. denied*, 143 S. Ct. 505 (2022) (quoting *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008)). "The automobile exception permits warrantless searches of an automobile and seizures of contraband where there is 'probable cause to believe that an automobile contains contraband.'" *Id.* (quoting *United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016)). "Such searches may lawfully reach 'places in which there is probable cause to believe that [contraband] may be found,' including containers discovered

6

within the automobile." *Id.* (quoting *California v. Acevedo*, 500 U.S. 565, 579-80 (1991)). "[O]fficers may conduct a warrantless search of a vehicle if they have probable cause to believe that the car contains contraband or other evidence." *United States v. Edwards*, 891 F.3d 708, 712 (8th Cir. 2018) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). Probable cause exists "when, considering all the circumstances, there is a fair probability that evidence of a crime will be found in a particular place." *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (citing *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016)). Probable cause to search under the automobile exception has been found where circumstances indicate the driver is likely under the influence of alcohol or a controlled substance, or an open container or controlled substance is likely in the car as evidenced by its odor. See *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000); *United States v. Caves*, 890 F.2d 87, 90-91 (8th Cir. 1989); see also *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (finding warrantless search of the defendant's vehicle was justified by probable cause to believe further evidence of an open container violation would be discovered).

Nebraska law makes it "unlawful for any person in the passenger area of a motor vehicle to possess an open alcoholic beverage container while the motor vehicle is located in a public parking area or on any highway in this state." Neb. Rev. Stat. § 60–6,211.08(2). This statute section defines "Open alcoholic beverage container" as "any bottle, can, or other receptacle: (i) That contains any amount of alcoholic beverage; and (ii)(A) That is open or has a broken seal or (B) the contents of which are partially removed[.]" Neb. Rev. Stat. § 60-6,211.08 (1)(d). The statute does not define "broken seal," and it does not appear any court has specifically addressed what constitutes a "broken seal."

Defendant asserts that the "possibly open container" did not establish probable cause because any suspicion of an open container violation "would have been easily dispelled if Officer Graber had inspected the bottle he was initially handed" and "checked to make sure that it was in fact open." (Filing No. 48 at pp. 11-12). But, because "[p]robable cause is a practical and common-sensical standard," "an officer may draw inferences based on his own experience" to determine whether probable cause exists. *Murillo-Salgado*, 854 F.3d at 418 (internal quotation marks and citations omitted). "Law enforcement officers have substantial latitude in interpreting and *drawing inferences from* factual circumstances." *United States v. Richardson*, 40 F.4th 858,

7

864 (8th Cir. 2022) (emphasis in original) (internal quotation marks omitted) (quoting *United States v. Green*, 9 F.4th 682, 690 (8th Cir. 2021)).

Here, officers knew the bottle in the brown paper bag on the seat in the vehicle next to Defendant contained alcohol, both from the statements of the passengers and from their own experience and observations. In reviewing the evidence, the undersigned magistrate judge entertains doubts that Officer Graber could visually tell "part of the seal was broken," but nevertheless finds officers could reasonably infer the bottle had "a broken seal" based on the vehicle's occupants' statements that the front passenger had "cracked" the bottle. Both Officer Graber and Officer Seitzer testified that they understood the statement that the bottle was "cracked" to mean the seal to the bottle was broken. Indeed, it is hard to imagine what else the occupants could have meant by "cracking" the bottle open if they were not referring to breaking the seal to the bottle, at least partially. The reasonableness of the officers' inference that the seal was broken was confirmed later in the stop when the front passenger explained she had tried twisting the top and indicated something "came out," when she was "just going to take a drink." The statute does not clarify whether a seal must be fully broken, just that the alcoholic beverage container "has a broken seal." Based on the facts before the officers, they reasonably inferred the alcoholic container had a "broken seal." Under the circumstances, the undersigned magistrate judge finds officers had probable cause to believe the vehicle contained an open alcohol beverage container, and that therefore probable cause existed to search the car for evidence related to the open container violation.[1] See *United States v. Mena-Valdez*, No. 21-1120, 2021 WL 5985319, at *1 (8th Cir. Dec. 17, 2021), *cert. denied*, 142 S. Ct. 2799 (2022) (finding officer "had probable cause to search the car for evidence related to the open container violation" after smelling alcohol and finding a red Solo cup filled with alcohol, in violation of Nebraska's open container law); *Branch v. Gorman*, 742 F.3d 1069, 1073 (8th Cir. 2014) ("Courts routinely find probable cause under open container laws when police officers observe empty bottles in vehicles.")

---

[1] The government relies solely on the automobile exception to the warrant requirement in this case, so the Court will not address the propriety of the search on the "search incident to arrest" exception. Nevertheless, in *United States v. Burtton*, 599 F.3d 823 (8th Cir. 2010), the Eighth Circuit found that, although a violation of Nebraska's open container law constitutes a traffic infraction for which Nebraska state law does not permit an arrest, a defendant's commission of such infraction "in the presence of officers supplied the officers with probable cause to arrest [the defendant] under the Fourth Amendment." *Burton*, 599 F.3d at 829-30. Therefore, the Eighth Circuit concluded the Fourth Amendment permitted an officer to conduct a search incident to an arrest after observing the defendant violate Nebraska's open container law. *Id.* at 830.

And, under the circumstances, Officer Seitzer did not exceed the scope of a permissible search by searching Defendant's drawstring bag for additional evidence of an open container violation. At the evidentiary hearing, Officer Graber testified "usually where there's one, there's multiple others – alcohol containers in the vehicle," although acknowledging that 42-ounce malt liquor beverages are sold individually. (TR. 27, 29). Officer Graber testified he has found alcohol containers as small as 1.5 ounce "shooters" and half-pint bottles of alcohol "pretty much everywhere in a vehicle before, under the seats, between the seats, in compartments," and in all types of bags. (TR. 15). Officer Seitzer also testified that in his experience, shot or shooters that are two to three inches tall and about the circumference of a quarter could be located anywhere, including people's pockets, jeans, glove box, center consoles, and small purses; as such, Officer Seitzer looked inside the bag for other open alcohol containers. (TR. 43). Based on the circumstances of this case and the officers' prior experience, they reasonably inferred that Defendant's bag could contain further evidence of open container violations. Accordingly, the officers did not exceed the scope of a reasonable search. See *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

In consideration of the officers' testimony, and after review of the evidence, the undersigned magistrate judge concludes officers had probable cause to believe an open container violation occurred, and they did not exceed the permissible scope of a search for evidence related to the open container violation by searching Defendant's drawstring bag. Accordingly, the undersigned magistrate judge finds that the warrantless search of Defendant's drawstring bag was permissible under the Fourth Amendment, and therefore his motion to suppress should be denied. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Brian C. Buescher, United States District Court Judge, that Defendant's Amended Motion to Suppress (Filing No. 47) be denied.

Dated this 11th day of August, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.