IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>MARK A. SMITH,<br><br>                    Defendant. | 8:22-CR-200<br><br>**MEMORANDUM AND ORDER ON OBJECTIONS TO FINDINGS AND RECOMMENDATION ON MOTION TO SUPPRESS** |

On September 20, 2022, the Grand Jury returned a three-count indictment against the Defendant, Mark A. Smith. Filing 1. Count I charges Smith with knowingly and intentionally possessing with the intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). Filing 1 at 1. Count II charges Smith with knowingly possessing a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A). Count III charges Smith with possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Filing 1 at 2. These charges stem from Smith's encounter with law enforcement during a traffic stop in Omaha, Nebraska, on July 16, 2022. Filing 60 at 9.

On November 30, 2022, Smith filed a Motion to Suppress certain evidence that was recovered during the traffic stop. Filing 26; Filing 27. The Government submitted a written response in opposition on December 14, 2022. Filing 32. Before the evidentiary hearing took place, Smith retained new counsel and his prior counsel that originally filed the Motion to Suppress withdrew. Filing 36 at 1; Filing 37 at 1. The evidentiary hearing was continued, and Smith's new counsel filed an Amended Motion to Suppress on May 22, 2023. Filing 45 at 1; Filing 46 at 1; Filing 47 at 1; Filing 48 at 1. The Government submitted a written response in opposition to the

1

Amended Motion on June 5, 2023. Filing 52. An evidentiary hearing was then held by United States Magistrate Judge Michael D. Nelson on June 20, 2023. Filing 60 at 1.

Judge Nelson completed a Findings and Recommendation on August 11, 2023. Filing 61. He recommends that Smith's Amended Motion to Suppress be denied. Filing 61 at 9. This matter is now before the Court on Smith's Statement of Objections to Judge Nelson's Findings and Recommendation. Filing 64 at 1. After reviewing the matter *de novo*, the Court overrules Smith's objections, adopts Judge Michael D. Nelson's Findings and Recommendation, and denies Smith's Amended Motion to Suppress.[1]

## I. BACKGROUND

As Judge Nelson noted, the events at issue on Smith's Amended Motion were captured on police body-worn cameras. *See* Filing 61 at 1; Filing 55 (Exhibits 1–3). His Findings and Recommendation discusses the facts pertinent to Smith's Amended Motion in greater detail. *See generally* Filing 61 at 1–5. The following background information provides context for the Court's ruling on Smith's objections.

On July 16, 2022, Omaha Police Officers Kyle Graber and Robert Seitzer were on patrol in their police cruiser near the intersection of 48th and Ames Avenue in North Omaha. Filing 60 at 8–9. At approximately 8:43 p.m., and while it was still somewhat light outside, the officers initiated a traffic stop of a Chevrolet Cruz after it failed to appropriately signal before turning and then executed an illegal wide turn to the outside lane. Filing 60 at 9–10, 40. After the vehicle came to a stop along the roadway, both officers exited their patrol car and began walking toward the

---

[1] Three days after Smith submitted his objections to Judge Nelson's Findings and Recommendation, his attorney moved to withdraw. Filing 64 at 1; Filing 66 at 1. Judge Nelson granted the Motion to Withdraw and re-appointed the counsel that originally represented Smith when he filed the original Motion to Suppress. Filing 67 (Text Order). Accordingly, the Court's references to "Smith's counsel" in this Order are to the counsel that represented Smith on the Amended Motion to Suppress, at the evidentiary hearing, and on the objections to Judge Nelson's Findings and Recommendation. Smith's current counsel did not represent him on any of these matters.

vehicle. Filing 55 (Exhibit 3). Officer Seitzer approached the driver's side while Officer Graber approached the passenger side. Filing 55 (Exhibit 3). Three occupants were inside the vehicle. Filing 55 (Exhibit 3). Sara Sevey was driving the car, Sharyce Smith was sitting in the front passenger seat, and the Defendant, Mark Smith, was sitting in the back seat of the car closest to the passenger side. Filing 55 (Exhibit 3); Filing 60 at 10.[2]

While walking past the side of the car, but before reaching the driver's side door, Officer Seitzer observed "a bottle that was wrapped in a brown paper baggie" in the back seat and immediately said "bottle." Filing 60 at 40; Filing 55 (Exhibit 1). Officer Seitzer then proceeded to engage with the driver of the car, requested her identification, and confirmed that the car was hers. Filing 55 (Exhibit 1). While Officer Seitzer spoke with the driver, Officer Graber spoke with Smith and the front seat passenger. Filing 55 (Exhibit 1, Exhibit 3). Officer Graber asked Smith for his identification, but Smith replied that he did not have it on him. Filing 55 (Exhibit 3). However, Smith did provide Officer Graber with his full name and date of birth. Filing 55 (Exhibit 3). Officer Seitzer asked the occupants what kind of bottle was in the back of the car and Smith replied, "A 40-ounce. They just picked me up from my house. It was frozen in my freezer." Filing 55 (Exhibit 3). Smith then handed the bottle over to Officer Graber. Filing 55 (Exhibit 3). As he took possession of the bottle, Officer Graber asked Smith, "Is that opened?" Filing 55 (Exhibit 3). Smith responded, "No, uh, she just cracked it a minute ago, but I told her it was frozen." Filing 55 (Exhibit 3).[3]

---

[2] Because the front seat passenger and the Defendant have the same last name, the Court will refer to the Defendant as Smith and will refer to the front seat passenger simply as the front seat passenger.

[3] Although most of the bottle was still in the brown bag at the time Smith handed it to him, Officer Graber testified that it was a 42-ounce bottle of Olde English malt liquor. Filing 60 at 11. Officer Graber also explained during his testimony that he understood the term "40-ounce" to refer to alcohol, and that brown paper bags are typically associated with containers of alcohol. *See* Filing 60 at 34–35.

As Officer Graber began to put the bottle on top of the Chevrolet Cruz, Smith continued on and said, "It hasn't been drunk out of." Filing 55 (Exhibit 3). Officer Graber then stated, "He said he cracked it" and the front seat passenger immediately interjected saying, "No I did. I did. I did." Filing 55 (Exhibit 3). As the front seat passenger insisted she was the one who "did" it, Smith said that the bottle had not been opened. Filing 55 (Exhibit 3). Officer Graber said that it had been "cracked" and the front seat passenger responded by saying once again, "But I did it." Filing 55 (Exhibit 3). Shortly thereafter, Officer Graber directed Smith to exit the vehicle. Filing 55 (Exhibit 3). When Smith pressed and asked why he was being told to exit the vehicle, Officer Graber eventually told him it was due to the bottle being "cracked" and referred to it as an "open container of alcohol." Filing 55 (Exhibit 3). Smith said that he did not admit "cracking nothing" and the front seat passenger interjected, "I said I did that." Filing 55 (Exhibit 3). Officer Graber told Smith and the front seat passenger that this did not matter, and they were "still going to be able to search the car because of that." Filing 55 (Exhibit 3). Smith then told Officer Graber the bottle was "not open" and said, "the seal isn't broken man." Filing 55 (Exhibit 3). As he did so, Smith reached on top of the car for the bottle and handed it to Officer Graber. Filing 55 (Exhibit 3). Officer Graber responded, "You just said it was cracked." Filing 55 (Exhibit 3). Smith said in reply, "I said it's not open" and "if you twist it like that then it's not open." Filing 55 (Exhibit 3).

All three occupants were eventually directed out of the car. Filing 55 (Exhibit 3). Officer Seitzer then proceeded to search the vehicle, beginning with the back seat area near where the bottle was initially seen. Filing 55 (Exhibit 1). He quickly opened a black drawstring bag on the floor of the vehicle where Smith had previously been sitting. Filing 55 (Exhibit 1). As he opened the bag, he pulled out a jersey and noticed that the bag also contained a firearm. Filing 55 (Exhibit 1). Officer Seitzer then detained Smith and placed him in handcuffs. Filing 55 (Exhibit 1); Filing

60 at 44. After returning to complete his search of the bag, Officer Seitzer uncovered "four black bags that contained methamphetamine" and a digital scale. Filing 60 at 44. This evidence serves as the basis for the charges at issue in this case. *See generally* Filing 1.[4]

During the suppression hearing, both officers testified that the bottle did not appear to be missing any contents. Filing 60 at 24, 48. They also testified that none of the occupants appeared intoxicated and they did not smell the odor of alcohol emanating from the vehicle, the drawstring bag in the vehicle, or on any of the passengers. Filing 60 at 28, 30–31, 50–51. However, Officer Graber testified that when the occupants in the vehicle referred to the bottle as having been "cracked," he understood this to mean that it constituted an unlawful open container. *See* Filing 60 at 12. He explained, "Usually when people state they cracked it, they've broken the seal on the top making it an open container." Filing 60 at 12. Officer Seitzer similarly testified that when he was told the bottle was "cracked," he took that to mean "the seal had been broken and the bottle was open." Filing 60 at 42. Officer Graber testified that once they "determined it was an open container of alcohol, [they] had all three occupants exhibit the vehicle for a probable cause search." Filing 60 at 42. Officer Graber also testified that as an Omaha Police Officer, he searches vehicles for open containers of alcohol and that he had previously found alcohol "pretty much everywhere in a vehicle before," including underneath seats, between seats, in compartments, and in bags. Filing 60 at 42. When Officer Seitzer was asked if he "searched the bag looking for other open containers of alcohol[,]" Officer Seitzer responded, "Correct." Filing 60 at 42.

---

[4] Although the search of the vehicle and the black drawstring bag located within it had already occurred at this point, Officer Seitzer continued to ask the two other vehicle occupants details about the bottle. *See* Filing 55 (Exhibit 1). Specifically, he asked who "cracked" the bottle, the front seat passenger responded that she did. Filing 55 (Exhibit 1). She then explained that when Smith first got in the car, he handed her the bottle and told her it was frozen. Filing 55 (Exhibit 1). The front seat passenger said that she did not "crack it" but she did twist it and then "the thing came out." Filing 55 (Exhibit 1; Exhibit 3). Officer Graber suggested she cracked the bottle to release tension because it was frozen. Filing 55 (Exhibit 3). The front seat passenger responded, "I was just going to take a drink that's all." Filing 55 (Exhibit 3).

## II. ANALYSIS

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), different standards of review apply when a party objects to a pretrial decision or a proposed findings of fact and recommendations by a magistrate judge. *See* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." *Id.*; *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) (When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . ."). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo

6

determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the suppression hearing and has reviewed the exhibits admitted at the hearing.

### B. Smith's Objections

Smith sets forth two basic arguments. *See* Filing 65 at 3. He contends that his "motion to suppress should be granted as officers lacked reasonable suspicion to prolong the stop to a search of the entire vehicle and all containers therein, and Officers lacked probable cause to justify a search of his personal bag for additional evidence of an open container violation." Filing 65 at 3. In furtherance of these two arguments, Smith has raised five objections to Judge Nelson's Findings and Recommendation. *See* Filing 64 at 1–2. Under the Federal Rules of Criminal Procedure, this Court "must consider de novo any objections to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). However, a party's failure to object in accordance with Rule 59 "waives a party's right to review." Fed. R. Crim. P. 59(b)(2); *United States v. Merrett*, 9 F.4th 713, 716 (8th Cir. 2021) (noting that the defendant "did not object to the magistrate judge's order denying his motion, and his failure to object waives his right to review under Federal Rule of Criminal Procedure 59(a)"), *cert. denied*, 142 S. Ct. 815 (2022); *see also United States v. Chen*, No. CR 21-250 (JRT/TNL), 2023 WL 1466503, at *3 (D. Minn. Feb. 2, 2023) (quoting *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015)). The Court will now address each of the five objections Smith raises.

#### 1. Smith's First Objection

Smith first "objects to the omission in the Findings and Recommendation of Officer Graber's testimony and Officer Seitzer's testimony that they did not see any contents missing from

the bottle discovered." Filing 65 at 4; *see also* Filing 64 at 1. This objection is meritless. First, Judge Nelson specifically noted in his Findings and Recommendation that "Officer Graber's body camera reflects the condition of the bottle as [Smith] handed it to Officer Graber[.]" Filing 61 at 2. Judge Nelson then included two screenshots from that body camera footage in his Findings and Recommendation. *See* Filing 61 at 2. One of these screenshots shows that the bottle was full of liquid. Filing 61 at 2. In any event, the Court has fully considered the testimony that Smith cites in this objection and concludes, on *de novo* review, that suppression remains unwarranted. This objection is overruled.

    2. *Smith's Second Objection*

In Smith's second objection, he argues that Judge Nelson "erred by rejecting the argument that the search of [his] drawstring bag was the product of a traffic stop extended without reasonable suspicion." Filing 65 at 4; *see also* Filing 64 at 1. Two matters are worth addressing at the outset. First, Smith explicitly waived any argument that the traffic stop itself was unlawful. *See* Filing 60 at 5. Judge Nelson asked Smith's counsel at the suppression hearing whether Smith was contesting the traffic stop, and Smith's counsel responded that he was not. Filing 60 at 5. Second, and more importantly, Smith also waived the argument he is now raising before this Court. *See* Filing 60 at 69–70. Near the conclusion of the suppression hearing, Smith's counsel and Judge Nelson engaged in the following colloquy:

> **[Judge Nelson]:** And [Defense Counsel], would you agree then that really the issue now that we've had the evidence come in is whether there was probable cause to search the bag? It doesn't appear that it happened -- that any traffic stop mission was extended; rather the traffic stop occurred and just that would be the justification for the initial encounter but then they really run into an investigation.
>
> **[Defense Counsel]:** Yeah, it -- yes, your Honor. And, I mean, so I was a little creative with that argument because the idea was standing and so I wanted to be secure on that. And to be honest, there were -- that was case law that said it's not per se the extension of time but it's the conduct of the officers. And that's where I

8

was trying to show that the misconduct was a legal extension. <u>But with this conceded, with the fact that the government has conceded standing and a legitimate expectation into the bag search, then, yes, the issue is probable cause to search.</u>

**[Judge Nelson]:** Okay. Thank you. I just want to clarify that -- I want to make sure I understand what the defendant's argument is. <u>At this point it's solely related to probable cause to search the drawstring bag.</u>

**[Defense Counsel]:** Yes, your Honor.

Filing 60 at 69-70 (emphasis added).

Despite conceding at the suppression hearing that the real matter at issue was "solely related to probable cause to search the drawstring bag[,]" Filing 60 at 70, Smith attempts to resurrect his "lack of reasonable suspicion to extend the traffic stop" argument that he expressly abandoned at the suppression hearing. This is improper. Smith has waived the issue, and the Court will deny this objection on that basis. In the alternative, even if the Court were to look past Smith's waiver and consider the merits of his argument, the objection still lacks merit.

Although "[a] passenger may suppress evidence found in a vehicle when an unreasonably extended traffic stop causes the search[,]" *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019), the search here was not the product of an unreasonably extended traffic stop. Any delay caused by the search was supported—at the very least—by reasonable suspicion that was developed while the officers were still taking actions consistent with the original purpose of the stop. *See United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir. 2020) ("A delay that prolongs—*i.e.*, adds time to—the stop to conduct investigatory actions unrelated to the purposes of the stop is impermissible unless it is supported by reasonable suspicion") (cleaned up). Within mere seconds of approaching the vehicle, Officer Seitzer noticed the bottle in the back seat. *See* Filing 55 (Exhibit 3). Officer Graber's body camera captures the occupants first referring to the bottle as

9

having been "cracked" approximately one minute into their interaction.[5] Thus, as Judge Nelson correctly concluded, "[a]t the time the officers made these observations and learned this information, the original 'mission' of the traffic stop was nowhere close to complete." Filing 61 at 6. Even if Smith did not waive this objection, the Court would still overrule it on the merits.

   3. *Smith's Third Objection*

      a. There Was Probable Cause that an Open Container Was in the Vehicle

In Smith's third objection, he argues that Judge Nelson "erred in finding that the officers had probable cause to believe the vehicle contained additional evidence of an open container violation." Filing 65 at 5; *see also* Filing 64 at 1. In assessing the merits of this objection, it is important to note that Smith does not argue the officers lacked probable cause to believe an open container violation had occurred.[6] As Smith puts it in his brief, "Officers Graber and Officer Seitzer may have established through testimony that they had probable cause to believe that there was an open container violation, but they did not point to specific facts that would provide probable cause to search the entire vehicle and all personal effects of the occupants therein." Filing 65 at 12. Elsewhere in his brief, Smith similarly concedes that "[w]hile [Officer Graber] may have reasonably inferred that the seal had been broken when the passengers stated that it had been 'cracked,' both Officers did not point to any facts or circumstances that led them to believe that

---

[5] Officer Graber's body camera shows that he exited his vehicle approximately 43 seconds into the recording. *See* Filing 55 (Exhibit 3). One minute and 43 seconds into the recording, Smith tells Officer Graber "she just cracked it a minute ago" in reference to the bottle. Filing 55 (Exhibit 3).

[6] Except as otherwise provided for by statute, under Nebraska law "it is unlawful for any person in the passenger area of a motor vehicle to possess an open alcoholic beverage container while the motor vehicle is located in a public parking area or on any highway in this state." Neb. Rev. Stat. § 60–6,211.08(2). In the context of this case, an "open alcoholic beverage container" is defined as "any bottle, can, or other receptacle: (i) that contains any amount of alcoholic beverage; and (ii) (A) That is open or has a broken seal or (B) the contents of which are partially removed[.]" Neb. Rev. Stat. § 60–6,211.08(1)(d).

10

further evidence of the already removed container could be found in [his] bag."[7] Although Smith does not directly contest the officers' probable cause determination that there was an open container violation, the Court notes that after reviewing the matter *de novo*, it agrees with Judge Nelson that the "officers had probable cause to believe the vehicle contained an open alcohol beverage container[.]" Filing 61 at 8. In his Findings and Recommendation, Judge Nelson specifically discussed the portion of Officer Graber's testimony where he said that he "could visually tell 'part of the seal was broken[.]'" Filing 61 at 8. Judge Nelson noted that he "entertain[ed] doubts" regarding this testimony, but "nevertheless [found the] officers could reasonably infer the bottle had 'a broken seal' based on the vehicle's occupants' statements that the front passenger had 'cracked' the bottle." Filing 61 at 8. As Judge Nelson correctly noted, "it is hard to imagine what else the occupants could have meant by 'cracking' the bottle if they were not referring to breaking the seal to the bottle, at least partially." Filing 61 at 8. Under the circumstances, the officers had probable cause to believe that an open container violation had occurred.

   b. There Was Probable Cause to Search the Vehicle

  Before this Court, Smith focuses the scope of his objection on whether there was probable cause to search the vehicle for additional evidence, not whether there was probable cause to believe an open container violation had occurred. *See* Filing 65 at 11 (Smith submitting, "[t]he question, however, is not whether or not the officers reasonably had enough evidence that the malt beverage

---

[7] At another point in his brief, Smith also says,"[w]hile the Officers have previous experience and a mistake of fact that the seal had been broken would not necessarily invalidate probable cause to believe that an open container violation occurred, the Officers had no other facts lending to probable cause [*sic*] to believe that they would find additional evidence in the vehicle or in [his] drawstring bag." Filing 65 at 7.

handed to them had a broken seal, but the question is whether the Officers had probable cause to believe that [his] personal bag contained additional evidence").

"Although a warrantless search usually constitutes a *per se* Fourth Amendment violation, the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so." *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S. 42 51–52 (1970)).[8] Smith does not contest the automobile exception's applicability to this case; his position is that the officers lacked sufficient reason to believe they would find "additional" evidence in the vehicle relating to the open container violation. *See* Filing 65 at 6. He attempts to distinguish the cases Judge Nelson relied on in his Findings and Recommendation by noting that the officers in his case "did not smell alcohol coming from the vehicle or observe empty bottles in the vehicle" and also "testified that they did not observe any of the occupants appear to be intoxicated." Filing 65 at 6–7. Smith also notes that the 42-ounce bottle at issue in this case is usually sold individually—something that Officer Graber acknowledged during his testimony. Filing 65 at 7. Smith further argues "there were no indications that there would be cups used to drink the malt beverage or indications that the occupants had been drinking because the beverage that was handed to Officer Graber was full" and had been described as "frozen." Filing 65 at 7–8.

Having considered all relevant circumstances, the Court concludes on *de novo* review that the facts Smith relies upon do not sufficiently undermine the officers' probable cause to search the vehicle for evidence relating to the open container violation. For probable cause purposes, what

---

[8] In assessing Smith's objections, the Court recognizes that at the suppression hearing the Government did invoke the "search incident to arrest" exception to the warrant requirement. *See* Filing 61 at 8. The Government relied solely on the "automobile exception" to the warrant requirement. *See* Filing Filing 61 at 8. These two exceptions are separate and distinct. *See United States v. Shackleford*, 830 F.3d 751 753 n.2 (8th Cir. 2016); *see also United States v. Legarrea*, No. 19-CR-100-CJW-MAR, 2020 WL 730873, at *7 (N.D. Iowa Feb. 13, 2020).

ultimately matters is whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Cotton v. Miller*, 74 F.4th 932, 934 (8th Cir. 2023) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Here the officers had probable cause to believe that an open container violation had occurred right in front of them. There was a fair probability that additional evidence relating to this violation would be found in the vehicle as well. This justified the search that led to the discovery of the firearm and methamphetamine in Smith's bag.

Although Smith relies upon a number of factors that were not present and that would have arguably made the officer's probable cause stronger (*e.g.*, the smell of alcohol, evidence suggesting the occupants were intoxicated, the presence of other empty bottles, etc.), probable cause is "a practical and common-sense standard" that "leaves plenty of room to draw reasonable 'inferences' from less-than-perfect evidence." *United States v. James*, 3 F.4th 1102, 1105-06 (8th Cir. 2021) (cleaned up), *cert. denied*, 142 S. Ct. 1352 (2022). The Eighth Circuit has previously upheld searches of vehicles under the automobile exception to the warrant requirement where officers had probable cause to believe there was an open container of alcohol inside. *See e.g.*, *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999); *United States v. Mena-Valdez*, No. 21-1120, 2021 WL 5985319, at *1 (8th Cir. Dec. 17, 2021), *cert. denied*, 142 S. Ct. 2799 (2022).[9] Other federal courts have done likewise. *See e.g.*, *United States v. Hulsey*, 11 F. App'x 607, 611 (7th Cir. 2001) (citing its prior decision in *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992), for the proposition that "discovery of open alcohol container in vehicle in violation of state law provided probable cause to believe car contained additional contraband or evidence"); *United States v.*

---

[9] The Findings and Recommendation also cites to *Branch v. Gorman*, where the Eighth Circuit said, "Courts routinely find probable cause under open container laws when police officers observe empty bottles in vehicles." 742 F.3d 1069, 1073 (8th Cir. 2014); *see* Filing 61 at 8. This Court recognizes that in *Branch* the Eighth Circuit was referring to probable cause to arrest rather than probable cause to search a vehicle pursuant to the automobile exception to the warrant requirement. *See Branch*, 742 F.3d at 1073.

13

*Howton*, 260 F. App'x 813, 817 (6th Cir. 2008) (noting that once law enforcement "discovered that at least one passenger in the van had violated" Kansas's open container statute, law enforcement "then had probable cause to search for any other similar contraband, i.e., any open containers of alcohol being transported in the vehicle in violation of state law"); *see also United States v. Robinson*, 94 F.3d 643 (4th Cir. 1996) (per curiam unpublished table decision) ("The plain view of the two open alcohol containers, in violation of the law, allowed the officers to search for other open containers because it was reasonable to believe that other contraband might be found within the vehicle").

When Officer Graber was cross-examined by Smith's counsel on the matter, Officer Graber testified that he believed there would be more open containers of alcohol in the vehicle. *See* Filing 60 at 27; *see also* Filing 60 at 34. Officer Graber explained "usually when there's one, there's multiple others -- alcohol containers in the vehicle." Filing 60 at 27. In this regard, Officer Graber's belief would have been even more reasonable given there were three occupants in the vehicle. *See United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) ("In determining whether probable cause exists, an officer 'may draw inferences based on his own experience'") (quoting *Ornelas v. United States*, 517 U.S. 690, 700 (1996)). Moreover, to the extent Smith insinuates that the officers should not have conducted a further search given they were already in possession of the bottle they initially noticed, the Court is not persuaded. *Cf. United States v. Legarrea*, No. 19-CR-100 CJW-MAR, 2020 WL 730873, at *8 (N.D. Iowa Feb. 13, 2020) (noting that the defendant had not cited any authority supporting his argument that the "presence of the bottles was so apparent that a further search of the vehicle was not justified" and concluding "[i]t was reasonable for officers to believe that further evidence would be present in the vehicle beyond the evidence that was visible through the windows").

14

It bears repeating that "[p]robable cause 'is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act.'" *United States v. Methes*, 58 F.4th 990, 994 (8th Cir. 2023) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Under the circumstances presented here, it was reasonable and prudent for the officers to believe there was a "fair probability" that the vehicle would contain additional evidence relevant to the open container violation after they already found one bottle they were told had been "cracked" by the occupants in the vehicle. *See Cotton*, 74 F.4th at 934. Accordingly, Smith's third objection is overruled.

4. *Smith's Fourth Objection*

In Smith's fourth objection, he argues that Judge Nelson "erred by concluding that under the circumstances, Officer Seitzer did not exceed the scope of a permissible search by searching [his] drawstring bag for additional evidence of an open container violation." Filing 65 at 8; *see also* Filing 64 at 1–2. This fourth objection is really an extension of his third objection. Because the officers had probable cause to search the vehicle based on the open container violation, they also had probable cause to search containers in the vehicle that could have contained other open bottles or canisters of alcohol. "The Supreme Court has clarified that the automobile exception's scope extends to the 'automobile and the containers within it where [officers] have probable cause to believe contraband or evidence is contained.'" *United States v. Keck*, 2 F.4th 1085, 1089 (8th Cir. 2021) (alteration in original) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)). The original bottle was observed in the back seat next to Smith; the drawstring bag was also in the back seat next to Smith. Filing 60 at 42–43. As Officer Seizter explained, the drawstring bag was the closest object next to where the open container initially was located. *See* Filing 60 at 45 (Officer

Seitzer testifying, "I searched the drawstring bag first because that was the closest area in proximity to the open container where a person was sitting").

Moreover, the drawstring bag was capable of holding a baseball jersey and a gun. Filing 60 at 44. Thus, it was logically capable of holding an open bottle of alcohol as well. *See United States v. Grooms*, 602 F.3d 939, 943 (8th Cir. 2010) ("Because law enforcement officers in this case confined their search to the areas of [the] vehicle where [the object of the search] may have been hidden, the search fits comfortably within the automobile exception to the Fourth Amendment's warrant requirement"); *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (noting that "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search, including a passenger's personal belongings") (cleaned up). For this reason, and those previously explained above, Smith's Fourth objection lacks merit and is overruled.

   5. *Smith's Fifth Objection*

In Smith's fifth and final objection, he argues that Judge Nelson "erred in concluding that based on the circumstances of this case and the officers' prior experience, they reasonably inferred that Defendant's bag could contain further evidence of open container violations." Filing 65 at 10; *see also* Filing 64 at 2. This too is really just a regurgitation of his third objection. The Court has already dispensed with these arguments. For those same reasons articulated previously, the officers had probable cause to believe the vehicle would contain evidence relating to the open container violation and they were therefore entitled to search the vehicle, as well as the drawstring bag located in the vehicle, for such evidence. Smith's fifth objection lacks merit and is overruled.

### III. CONCLUSION

For the foregoing reasons, and upon *de novo* review, the Court agrees with the findings and conclusions reached by Judge Nelson. Smith's objections lack merit, and all other issues that have not been raised by Smith are waived. *See* Fed. R. Crim. P. 59(b). Accordingly,

IT IS ORDERED:

1. Smith's Statement of Objections, Filing 64, is overruled;

2. Judge Nelson's Findings and Recommendation, Filing 61, is adopted; and

3. Smith's Amended Motion to Suppress, Filing 47, is denied.

Dated this 24th day of October, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge